**No. 20-_____**

IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

———————

In re Sylvester Turner and Houston First Corporation,

*Petitioners,*

———————

On Petition for a Writ of Mandamus to the United States District Court for the
Southern District of Texas, Houston Division, No. 4:20-cv-02104

———————

**JOINT MERGENCY MOTION TO STAY PENDING RESOLUTION OF THE PETITION
FOR WRIT OF MANDAMUS**

———————

Ronald C. Lewis
Suzanne Chauvin
Collyn A. Peddie
City of Houston Legal Department
900 Bagby Street, 4th Floor
Houston, Texas 77002
Tel. (832) 393-6302
Fax (832) 393-6259
ronald.lewis@houstontx.gov
suzanne.chauvin@houstontx.gov
collyn.peddie@houstontx.gov

*Attorneys for Petitioner
Mayor Sylvester Turner*

Gregory Holloway
Leah M. Homan
TAYLOR, BOOK, ALLEN & MORRIS
LLP
1221 McKinney, Suite 4300
Houston, Texas 77010
Tel. (713) 222-9542
Fax (713) 655-7727
gholloway@taylorbook.com
lhoman@taylorbook.com

*Attorneys for Petitioner Houston First
Corporation*

Petitioner Sylvester Turner, Mayor of the City of Houston, and Houston First Corporation ("HFC")  respectfully move for a stay pending resolution of their petition for writ of mandamus complaining of Judge Lynn Hughes of the Southern District of Texas' purported temporary restraining order. Issued from the bench, (a transcript will follow in a few hours), from which a petition for writ of mandamus has been filed in this Court. Petitioners respectfully request emergency and expedited consideration of this stay motion and *a ruling by 6. a.m.* July 18, 2020, the day Houston First will be required to open and provide convention services for the Republican Party of Texas ("RPT") annual state convention in the George R. Brown Convention Center ("GRB"),  because waiting longer to grant such a stay would cause irreparable injury to the Petitioners and to the residents and visitors to the City of Houston, whom Mayor Turner represents.

## APPLICABLE STANDARD

In *In re Abbott*, 954 F.3d 772, 778 (5th Cir. 2020), this Court recently entered a stay of a temporary restraining order pending resolution of petition for a writ of mandamus directed to that T.R.O. *See Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 410 (5th Cir. 2013).

## ARGUMENT

I. **WITHOUT A STAY OF JUDGE HUGHES' T.R.O., MAYOR TURNER, HOUSTON FIRST, AND THE PUBLIC INTEREST WILL BE IRREPARABLY HARMED; RESPONDENTS WILL NOT BE HARMED WITH A STAY**

### A. The Risk of Pandemic Spread and Hospital Overburdening is Severe and Increasing if the RPT In-Person Convention Takes Place in the GRB

Beginning with the final factors, a stay is justified here because the Respondents are attempting to force Houston First to host and provide in-person convention services for RPT at the GRB in the midst of a global pandemic and located in one of the nation's current hotspots for spread and hospitalization of the disease. Doing so will endanger the lives and health of not just the participants in the convention and convention workers, but the hotel and restaurant workers who come into contact with them, the health care providers who may have to care for them and those they infect. This creates an unnecessary and unacceptable heightened rate of spread within the City of Houston—which teeters on the brink of an out-of-control spread and utilizing battle-field triage methods—and the communities to which these convention participants later return. Consequently, a stay would be in the public interest.

This Court has already determined that the COVID-19 pandemic presents extraordinary circumstances warranting extraordinary relief. *See In re Abbott*, 954 F.3d at 778. The pandemic has worsened considerably since that case was

decided.

Houston is now one of the world's hotbeds for COVID-19 infection and conditions are worsening. This Court may take judicial notice that, according to the Texas Medical Center's July 11, 2020 update[1] the number of cases in Harris is over 60,000 and increasing every day.

On July 2, Governor Abbott amended his prior order No. GA-28 to state that, "people **shall not** be in groups larger than ten ...." *See* M.R. 4.

The Court should take judicial notice that, the same day, the Texas Medical Center—the largest medical center in the world—reached 102% of its intensive-care capacity. That is unsustainable.

According to Dr. David Persse, the City's Director of EMS and Public Health Authority, whose Affidavit is included as M.R. 0662-66, in a letter to Mayor Turner and Brenda Bazan of Houston First, dated July 7, 202 (M.R. 0687-88),

> *Aerosol transmission in a large indoor gathering can be expected to be considered a "super spreader" event.*

---

[1] Texas Medical Center COVID-19 Infection Rate in the Greater Houston Area (July 11, 2020), *available at* https://www.tmc.edu/coronavirus-updates/infection-rate-in-the-greater-houston-area/.

*A convention attended by thousands of people will be within the Highest Risk Event Category as it will be difficult (more likely impossible) to maintain social distancing and appropriate hygiene practices at a convention facility over multiple days attended by people from distant locations.*

*The planned use of the George R. Brown for convention activities over the next month is a clear and present danger to the health and well-being of convention attendees, workers, local hotel and restaurant owners and Houstonians because of the surging pandemic.*

Emphasis supplied. *He has called the fact of aerosolization a "game-changer" because it means that ordinary mitigation efforts, such a mask wearing and distancing, would become ineffective*. M.R. 0662-63.

### B. By Contrast, this Court May Take Judicial Notice that the RPT State Convention Is Taking Place Already Virtually, Under a Contingency Planned Developed Over Many Months

Respondents argued the district court, the state court in Houston (that denied them a T.R.O.) and the Texas Supreme Court that refused to grant their petition for writ of mandamus, *see* M.R. 0651–56, that they are deprived of speech and assembly and equal protection rights because their convention has been cancelled. That assumption, underlying every claim for constitutional injury, is belied by the undisputed facts.

1.   This Court may take judicial notice that the RPT virtual state convention has already begun and is taking place now virtually.

2.     RPT Chairman Dickey announced last Friday that the *GOP convention could be conducted online*.  M.R. 0669–70.

3.     Dickey assured Republicans that *planning for a virtual convention has been going on for months and that there will be no loss of enjoyment and satisfaction in a virtual convention*. *See id.* (emphasis added).

4.     The RPT Executive Committee voted Monday night to hold its convention virtually.  *Id.* at 0683 (showing convention live stream links).

5.     In addition, the GOP's official website stated last Thursday that:

> *If we have to go online, safe, local gatherings absolutely may be organized so that while Convention business and electronic voting is being conducted with online systems, we can enjoy being with fellow delegates*.

M.R. 0679–80 (emphasis supplied).

6.     The GOP website reassures attendees that, "if we must move to our online contingency plan, the schedule will remain intact."  *Id.* at 0680 (emphasis supplied).

Consequently, the only possible deprivation here is of the ability to hold an *in-person* convention *in a particular hall on a particular date in a global pandemic hot zone.  Even Respondents do not contend that that amounts to a constitutional deprivation*. They have pleaded only that complete cancellation

will cause such injury.

This Court may also ***take judicial notice that political party conventions can be held successfully and virtually***. The Texas Democratic Party has already held its completely virtual convention. M.R. 0674.

In considering the balance of harms, this Court should consider the evidence outlined above: that the incremental difference between an in-person convention and a virtual one is not outweighed by the significant danger of spreading a virulent, increasingly infectious pandemic disease across the state and overwhelming Houston's hospitals, which are already operating above capacity in surge mode.

## II.    MAYOR TURNER AND HOUSTON FIRST CAN SHOW AND HAVE SHOWN A STRONG LIKELIHOOD OF SUCCESS ON THE MERITS, INCLUDING PREVAILING ON THE SAME ISSUES IN FOUR OTHER STATE JUDICIAL PROCEEDINGS

### A.    One Court Has Already Held that Houston First Properly Exercised Its Valid Contract Right to Declare an Event of Force Majeure

The Contract between Houston First and the GOP, a true and correct copy of which is attached as M.R. 0642, executed in 2017, long before COVID-19 existed, contains a *force majeure* clause. In March, the parties voluntarily added the following amendment:

> For the avoidance of doubt, the parties acknowledge and agree that the following occurrences are within the scope and definition of Force Majeure under Section 12 of the Agreement: Pandemics affecting Houston or preventing use and occupancy of the Facility; and orders materially and substantially restricting the size of gatherings at the Facility issued by the Mayor of the City of Houston, Governor of the State of Texas… issued withing 30 days of the Event.

*See* M.R. 0650.

On July 8, 2020, Mayor Turner wrote to Brenda Bazan,[2] attaching Dr. Persse's letter, in which he stated:

---

[2] On July 2, 2020, Governor Abbott had also amended his prior order No. GA-28 to state that, for interior gatherings in the State, "people *shall not* be in groups larger than ten . . . ." Proclamation Amending Executive Order GA-28 (July 2, 2020). Six thousand delegates were expected at the RPT Convention.

According to the Dr. Persse, the planned use of the GRB as a convention this month threatens the health, safety and welfare of those attending and working at the convention, and all others who would be exposed to them. I attach a letter from him …

**HFC should exercise its contract rights to cancel the State Republican Party Convention due to the pandemic.**

*See* M.R. 0686 (emphasis supplied). Because he is not a contracting party, Mayor Turner had no authority to exercise the *force majeure* clause himself.

By letter, dated July 8, 2020, CEO Bazan gave notice to the RPT that Houston First was exercising it contractual right to declare a condition of *force majeure* and terminating and excusing performance under the Contract. M.R. 0688.

The day after Houston First exercised its contract rights, Steven Hotze and others who are also Respondents here filed a lawsuit alleging claims virtually identical to those asserted here, but under the Texas Constitution. The RPT also filed a separate lawsuit alleging breach of contract. The lawsuits were combined for purposes of hearing.

On Thursday, July 9, Judge Larry Weiman, then ancillary judge, denied both applications but set an evidentiary hearing on the application for temporary injunction. *See* M.R. 657.

Respondents filed two original actions in the Texas Supreme Court that essentially duplicated the claims for relief sought in the ancillary court and

sought here. The Court denied relief in both cases by order and docket entry, dated July 13, 2020. *See* M.R.0651-56. While the Supreme Court acknowledged Respondents' free speech and assembly rights, it did not find that there was any constitutional right to "commandeer" a particular city property for such purposes. M.R.0653.

The Hotze Respondents non-suited their claims and improperly refiled them in the underlying, existing lawsuit in federal district court. No leave to seek amendment or joinder was sought or granted and nothing about the claims meets the standards for joinder.

After holding a lengthy evidentiary hearing in the 333rd Judicial District Court of Harris County, at which Dr. Persse testified live, Judge Daryl Moore found: "***Houston First adduced evidence that it complied with the notice provision of the Force Majeure Clause when it sent notice of July 8, 2020…***" *See* M.R. 0661 (emphasis supplied).

Judge Hughes held a T.R.O. hearing on July 15. After the hearing he denied the motion for a T.R.O. in the wee hours of July 17, The Hotze Respondents filed an amended petition without leave and added the RPT as a plaintiff. It also filed a motion to reconsider of its original motion for T.R.O. even though it sought additional relief not sought in its original motion.

At the July 17 hearing, the Court purported to grant the motion to consider and a temporary restraining order requiring that He stated that "The [Republican] party tried [to make it work with the virtual platform.] … Houston First will make the hall [GRB] available to them on the same financial arrangement but not the same concurrence [dates] [as the Contract requires] . . . ." He continued "Houston First has to do what it was supposed to do up to July 8.  Houston First will use good faith efforts to make space available, including the following weekend [July 25-26] if that's what it takes." He also said "the contract being adjusted . . . ." apparently to reflect additional amount the RPT would owe Houston First for space and services outside the requirements of its existing contract with the RPT.  Mayor Turner has requested a transcript of the relevant portion of this transcript which we be filed tonight.

**B.    Jurisdictional Grounds for Granting the Stay (The Trial Court Had No Jurisdiction to Enter a Purported T.R.O.)**

   1.    ***Respondents' purported constitutional claims are moot***.

 This Court may take judicial notice that the RPT Convention has not been cancelled. It is undisputed that the Republican Convention is going forward ***now*** virtually and that the RPT is not and will not be utilizing the GRB.

   Individual Respondents, argued in all other courts only that they are deprived of speech, assembly, and equal protection rights because the RPT convention has been ***cancelled in its entirety***. That assumption, underlying every purported claim for constitutional injury, is belied by the undisputed facts.

   a.    This Court may take judicial notice that the RPT virtual state convention has already begun and is taking place now virtually.

   b.    RPT Chairman Dickey announced last Friday that the ***GOP convention could be conducted online.*** M.R.0669-70.

   c.    RPT Chairman Dickey assured Republicans that ***planning for a virtual convention has been going on for months and that there will be no loss of enjoyment and satisfaction in a virtual convention***. *See id.* (emphasis supplied). That such plans have now gone awry, solely because of the fault of the RPT and its technical crew, does not amount of a deprivation of constitutional rights by Mayor Turner or Houston First.

12

d.    The RPT Executive Committee voted Monday night, July 13 to hold its convention virtually. It had not pursued further legal remedies to hold an in-person event until early today. The RPT's unreasonable delay or laches in seeking emergency relief should deprive them of the right to any equitable relief.

e.    In addition, the RPT's official website stated last Friday, July10 that:

> should the convention center become unavailable, the SREC voted on Sunday night to move foreward [sic] with a contingency plan taking the convention activities online ... ***If we have to go online, safe, local gatherings absolutely may be organized so that while Convention business and electronic voting is being conducted with online systems, we can enjoy being with fellow delegates***.

M.R.0679-80 (emphasis supplied).

f.    The RPT website reassures attendees that, "if we must move to our online contingency plan, ***the schedule will remain intact***." M.R.680 (emphasis supplied).

This Court may also ***take judicial notice that political party conventions can be held successfully and virtually***. M.R.0674.

There is no constitutional deprivation attending a virtual event as opposed to a live one. If that were the case, ***every court that is holding oral arguments by***

*Zoom, including this one and the Texas Supreme Court, would be violating the Constitution*.

Moreover, this is not the case in which Mayor Turner or anyone banned speech or assembly. Convention-goers can still meet in Houston restaurants and other safer spaces or engage in the marches to which they compare their convention.

2.      ***Alternatively, Respondents' claims, if any, are not ripe.***

Unless Respondents can show that Mayor Turner or Houston First have cancelled the 2020 RPT state convention in its entirety, Respondents will not suffer a constitutional violation here ***by their own measure***.

3.      ***The District Court abused its discretion is not abstaining and dismissing the RPT's claim for declaratory relief because RPT has a pending state lawsuit that governs the issues raised here.***

The factors a court takes into consideration deciding whether to abstain are: (1) whether there is a pending state-court action in which all of the matters in controversy may be fully litigated; (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant; (3) whether the plaintiff engaged in forum shopping in bringing the suit; (4) whether possible inequities exist by allowing the declaratory plaintiff to gain precedence in time or to change forums;

14

(5) whether the federal court is a convenient forum for the parties and witnesses; (6) whether retaining the lawsuit in federal court would serve the purposes of judicial economy; and (7) whether the federal court is being called upon to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending. *St. Paul Insurance Co. v. Trejo*, 39 F.3d 585, 590-91 (5th Cir. 1994).

Here, it is undisputed that RPT has a pending lawsuit in the 333rd Judicial District Court of Harris County Texas. *See* M.R. 0659-61.

There is also unquestionably forum shopping here. Not only had Respondents already been participated ***five court proceedings*** based upon five lawsuits on the same issues, including two mandamus petitioner in the Texas Supreme Court, but they brought this action only by improperly adding their purported constitutional claims to an otherwise unrelated COVID lawsuit against the Governor on July 14 and joining the RPT as a plaintiff in the middle of the night on July 17. This is after Judge Moore of the 333rd Judicial District Court in Harris County held an evidentiary hearing and specifically found that Houston First had properly exercised its contract rights. *See id.*

Consequently, many real inequities exist by allowing the declaratory Respondents who seek declarations to change forums. First, it is unclear

15

whether counsel for Respondents actually represents the RPT, which has been represented by separate counsel and has filed separate lawsuits up to now. Second, the risk of inconsistent rulings is very high. Third, because the RPT has waited so long to assert its claims, after apparently throwing in the towel on Monday night and voting to hold a virtual convention, it will be difficult if not impossible for Houston First to provide the GRB and convention services by tomorrow.

Retaining this lawsuit, as amended, in federal court would also ***serve no purposes of judicial economy*** but would only prolong this litigation and duplicate the tireless efforts of the other courts which have heard these same issues.

In this case, a federal court is being called upon to second guess a state judicial decree by the 333rd District Court before whom the parallel state suit between the same parties is pending.

In assessing abuse of discretion, the Court considers three factors: (1) whether the state proceedings "constitute an ongoing state judicial proceeding;" (2) whether the proceedings "implicate important state interests;" and (3) whether there is "an adequate opportunity in the state proceedings to raise constitutional challenges." *County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).

The RPT has not dismissed its state law claims; therefore, the state proceedings "constitute an ongoing state judicial proceeding." The proceeding "implicate important state interests" because the only rights that the RPT has to use the GRB derive from a contract govern by Texas law.

Finally, Respondents had more than "an adequate opportunity in the state proceedings to raise constitutional challenges." Indeed, all Respondents raised such constitutional and contract challenges and had evidentiary hearings on them.

4.    ***Individual Respondents lack standing to assert their purported claims.***

It is undisputed that no individual Respondent is a party to Houston First's contract with the RPT and none is RPT's legal representative. Consequently, individual Respondents have no right to assert the RPT's rights under the Contract. As that contract provides the sole basis for any right to use the GRB, they have no standing to assert any claims here.

Individual Respondents have not pleaded and cannot demonstrate that they are third-party beneficiaries of the Contract, entitled to enforce it. Indeed, individual Respondents do not meet the requirements to be considered one of the two types of third-party beneficiaries Texas law, which governs here,

recognizes: donee beneficiaries and creditor beneficiaries. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999).

*Individual Respondents, are, at most, only incidental beneficiaries* of the Contract. Under Texas law, "*an incidental beneficiary acquires no right either against the promisor or the promisee* by virtue of the promise." *See Tawes*, 340 S.W.3d at 425 (quoting 13 Williston on Contracts § 37:19, at 124-25 (4th ed. 2000)) (emphasis supplied). They, therefore, have no standing to assert any right to use the GRB here.

> 5.   *There is no case or controversy here because Respondents have not pleaded or shown any injury "fairly traceable" to any illegal conduct by Mayor Turner or Houston First.*

Neither petitioner deprived any respondent of participation in the RPT Convention. Respondents' alleged constitutional injuries flow from the alleged cancellation of the entire RPT Convention, something that has not occurred. Moreover, Mayor Turner is not party to the RPT contract and Respondents have not pointed to any order he issued under any authority that would have had the effect of "cancelling" the RPT convention. Because Respondents asserted no valid claim against the Mayor, he was improperly included in the Court's purported T.R.O.

**B.    The District Court Had No Authority to Order Specific Performance of a Contract Not in Front of It and To Amend that Contract to Impose Additional Burdens on Petitioners by T.R.O.**

It is telling that even the RPT has not here asserted its breach of contract claims, asserted in state court, even though the resolution of the question of whether Houston First properly exercised the *force majeure* provisions of the Contract is central to resolution of the purported constitutional claims here. Instead of asserting those contract claims in federal court and allowing the district court to avoid deciding the constitutional issues asserted, RPT essentially asked the district court skip over the contract issues, ***assume*** the contract had been breached, and go right to whether such breach had constitutional dimensions. Respondents and the district court, however, cannot skip that essential step.

As demonstrated below, Respondents failed to establish any of the requirements to warrant issuance of a temporary restraining order. The first of these is "a substantial likelihood of success on the merits." *See Byrum v. Landreth,* 566 F.3d 442, 445 (5th Cir. 2009). The RPT simply cannot do that, if at all, without showing that Houston First somehow improperly terminated the contract under the *force majeure* clause.

Contract rights ordinarily have no constitutional dimensions as the Texas Supreme Court has affirmed in these cases. Because RPT has not asserted its contract claims in this proceeding, the district court had no ability or opportunity to determine whether Houston First had breached the Contract and, therefore, no ability to determine if RPT was likely to succeed on the merits of its claim.[3] For that reason alone, any injunction here was improperly granted.

More important, Respondents asked the district court, under its equitable powers, to provide RPT with *new and different* contract rights to have access to and services in the GRB on July 19 and the weekend thereafter.

The district court had no authority to impose *new* contract obligations on a party, particularly in the context of a T.R.O., and Respondents supply no authority that permitted Judge Hughes to do so. This is particularly true where, as here, there is no showing of any contract breach.

Finally, as suggested herein, the notion of "constitutionalizing" every contract involving speech or assembly is especially fraught and would have dire, unintended consequences.

---

[3] Indeed, the failure to assert such claims was extremely misleading in that Respondents have attempted to convince the Court that, rather than grounding the termination in force majeure, it was based upon some unspecified executive or disaster order by Mayor Turner.

C.     **One Court Has Already Held that Houston First Properly Exercised Its Valid Contract Right to Declare an Event of** *Force Majeure*

As set forth in the fact section, after holding a lengthy evidentiary hearing in the 333rd Judicial District Court of Harris County, at which Dr. Persse testified live, Judge Daryl Moore found no breach of contract. *See* M.R. 0662 (emphasis supplied).  Because Respondents here are not parties to the Contract, have no rights in it, and cannot seek judicial interpretation of these provisions here or anywhere else, they are bound by this determination. Moreover, the RPT should be bound by this determination as well since it has not placed the question of breach of contract before any federal court.

D.     **Respondents Have Improperly Joined Mayor Turner, Houston First, and the RPT in An Unrelated, Pre-Existing Federal Lawsuit**

There is no COVID-19 MDL. Nevertheless, the district court effectively created one when he allowed unrelated claims and parties to be improperly joined in an ongoing proceeding involving only challenges Governor Abbott's executive orders.

Mayor Turner and Houston First were only added to the underlying lawsuit by amended pleading (without leave of court) on July 14, 2020. The RPT was added early on the morning of July 17, 2020 without prior leave of court. Under Fed. R. Civ. P. 21, joinder of new parties in one action is proper only if a) rights are asserted against them jointly arise out of "the same transaction, occurrence, or series of transactions and occurrences," and b) "any question of law or fact common to all defendants will arise in the action." Respondents have not attempted to meet these standards here and cannot do so.

First, it is undisputed that the underlying, original lawsuit here addressed only Governor Abbott's executive orders concerning COVID-19 contact tracing, mask wearing, and the like. By contrast, Respondents' claims against Mayor Turner and Houston First turns on the exercise by Houston First of a *force majeure* provision in the Contract and are unrelated to Respondents' claims against Governor Abbott. Judge Hughes overruled Mayor Turner's objection to joinder. For the same reasons, the RPT's claims are improperly joined here.

Having failed to obtain relief from Judge Hughes and three state courts in four other lawsuits, one of which is ongoing, Respondents have simply gone forum shopping. That is improper and should not have been permitted.

**E.    Respondents Failed to Establish the Elements Required to Warrant Issuance of a T.R.O.**

Issuing a temporary restraining order is an "extraordinary and drastic remedy." *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985) (internal quotation omitted). Such injunctive relief should issue only if the alleged harm is "immediate and irreparable." Fed. R. Civ. P. 65(b). Respondents could not meet the requirements for such injunctive relief that without demonstrating that the underlying contract here was breached.

First, Respondents utterly failed to show substantial likelihood of success on the merits because they failed to put the relevant issues before the court to decide.

They also did not show irreparable injury. As suggested, all alleged irreparable injury pleaded flowed, if at all, from the failure to have any convention at all. That they RPT could not use Zoom properly is not a constitutional violation. The incremental difference in speech and association in

having an on-line event as opposed to a live one is not a constitutional deprivation. If it were, every federal and state court would also be in violation.

As also discussed above, in weighing the balance of harms here, the district court should have considered the evidence outlined above: that the incremental difference between an in-person convention and a virtual one is not outweighed by the significant danger of spreading a virulent, increasingly infectious, pandemic disease across the State and/or overwhelming Houston's hospitals which are already operating above capacity and in surge mode. Consequently, the equities weigh overwhelmingly in the public interest to move the convention online.

## II.   THE COURT'S PURPORTED ORDER DOES NOT COMPLY WITH THE FEDERAL RULES OF CIVIL PROCEDURE, IS TOO VAGUE TO BE ENFORCED, GRANTS MORE RELIEF THAN SOUGHT IN THE PROCEEDINGS, AND WAS INTENDED TO PREVENT PETITIONERS FROM SEEKING RELIEF IN THIS COURT

The requirements for a temporary restraining order, the only relief sought by Respondents here, are quite precise and set forth in Rule 65(b). Judge Hughes refused to issue a written order today but claimed one would follow tomorrow. Nevertheless, he outlined the order that he claimed should take place immediately and *threatened counsel for the City, Brian Amis, with contempt in the*

***Mayer "interfered" with his order***. The purported particulars are outlined in the fact section of the brief.

First, the purported order does not comply with Rule 65(b). it is not in writing and does not specify in reasonable detail the exact conduct required. Second, it does not supply any reasons for the Court's unprecedented actions or describe any injury that would justify such relief. State the time for issuance or time it expires or set a date for a preliminary injunction hearing. Worse, there was no discussion of a bond for all of the additional work, not required by Houston First's contract, that the Court has purported to require. Nothing was filed with the clerk's office.

No party can be bound to take actions, punishable by contempt, without the Court's complying with these mandatory requirements. On that basis alone, mandamus should be granted

Moreover, the District Court has granted more relief than sought and even suggested he may enter a preliminary injunction which was not sought. This too is improper.

## PRAYER

For these reasons and those set forth in Mayor Turner and Houston First's Petitions for Writ of Mandamus, this Court should stay Judge Hughes Temporary Restraining Order Pending Resolution of Mayor Turner and

25

Houston First's Petitions for Writ of Mandamus.

Respectfully submitted,

**CITY OF HOUSTON LEGAL DEPARTMENT**

By: _/s/ Collyn A. Peddie_

RONALD C. LEWIS
City Attorney
State Bar No. 12305450
ronald.lewis@houstontx.gov
Suzanne Chauvin
Chief, General Litigation Section
State Bar No. 04160600
suzanne.chauvin@houstontx.gov
Collyn A. Peddie
Sr. Assistant City Attorney
State Bar No. 15707300
collyn.peddie@houstontx.gov
900 Bagby, 4th Floor
Houston, Texas 77002
832.393.6491 – Telephone
832.393.6259 – Fascimile

*Attorneys for Petitioners/Defendants*
*Mayor Sylvester Turner*

## CERTIFICATE OF CONFERENCE

I certify that I have attempted to confer [or other appropriate] with Jared Ryker Woodfill, by email on July 17, 2020, but counsel has not responded to my attempts.

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) in that it contains 4,812 words. It also complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) in that it has been prepared in a proportionally spaced typeface using Microsoft Word 14.0 in Calisto MT 14 point font.

*/s/ Collyn A. Peddie*

Collyn A. Peddie

27

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2020, I electronically filed the foregoing with the Clerk for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. A true and correct copy of the foregoing has been served on all counsel of record as follows:

*/s/ Collyn A. Peddie*

Collyn A. Peddie

**ATTORNEYS FOR PLAINTIFFS:**

Jared Ryker Woodfill
Woodfill Law Firm PC
3131 Eastside St
Ste 450
Houston, TX 77098
713-751-3080
Email: jwoodfill@woodfilllaw.com

**ATTORNEYS FOR DEFENDANTS:**
Todd Dickerson
Office of the Attorney General of Texas
300 W 15th Street
11th Floor
Mc-019
Austin, TX 78701
52-475-4082
Email: todd.dickerson@oag.texas.gov