**No. 20-20379**

IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

———————

In re Mayor Sylvester Turner and Houston First Corporation
*Petitioners,*

———————

On Petition for a Writ of Mandamus to the United States District Court
for the Southern District of Texas, Houston Division, No. 4:20-cv-02104

———————

## HOUSTON FIRST CORPORATION'S
## PETITION FOR WRIT OF MANDAMUS

———————

GREGORY A. HOLLOWAY
State Bar No. 24000502
Federal Bar No. 23034
gholloway@taylorbook.com
MICHAEL P. MORRIS
State Bar No. 14495800
Federal Bar No. 3740
mmorris@taylorbook.com
LEAH M. HOMAN
State Bar No. 24106109
Federal Bar No. 3438531
lhoman@taylorbook.com
**TAYLOR, BOOK, ALLEN & MORRIS, LLP**
1221 McKinney, Suite 4300
Houston, Texas 77010
Telephone: (713) 222-9542
Facsimile: (713) 655-7727
**ATTORNEYS FOR PETITIONER/DEFENDANT
HOUSTON FIRST CORPORATION**

## CERTIFICATE OF INTERESTED PERSONS

Case No.:         U.S. District Court Case No. 4:20-CV-02104

Case Style:       *In re Mayor Sylvester Turner and Houston First Corporation ("Houston First")*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

## I.   Petitioner/Defendant

Houston First Corporation
*Petitioner/Defendant*

Gregory A. Holloway, Michael P. Morris, Leah M. Homan
*Counsel for Petitioner/Defendant*

## II.   Co-Petitioner/Co-Defendant

Mayor Sylvester Turner, in his official capacity
*Co-Petitioner/Co-Defendant*

Ronald Lewis, Suzanne Chauvin, Collyn Peddie
*Counsel for Co-Petitioner/Co-Defendant*

## III.   Respondents/Plaintiffs

Steven F. Hotze, M.D. and 1325 fellow co-plaintiffs, both individuals and corporate entities
*Respondents/Plaintiffs*

Jared Woodfill
*Counsel for Respondents/Plaintiffs*

## IV.   Respondent/Intervenor

The Republican Party of Texas
*Respondent/Intervenor*

Jared Woodfill
*Counsel for Respondent/Intervenor*

Warren Norred
*Counsel for Respondent/Intervenor*

## V.   Respondents/Co-Defendants

Governor Gregg Abbott, in his official capacity, The State of
Texas, Texas Health and Human Services Commission, Texas
Department of State Health Services, Phil Wilson, in his official
capacity, John William Hellerstedt, MD, and Houston First
Corporation
*Respondents/Co-Defendants*

Todd Dickerson
*Counsel for Respondents/Co-Defendants*

## VI.   District Court

Hon. Lynn N Hughes
*United States District Court for the Southern District of Texas*

## TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ..........................................ii

TABLE OF CONTENTS...................................................................iv

TABLE OF AUTHORITIES .......................................................vi

STATEMENT OF RELATED PROCEEDINGS BEFORE THIS COURT ...................................................................... 1

RELIEF SOUGHT ................................................................ 1

ISSUES PRESENTED ............................................................ 4

RELEVANT FACTS ............................................................... 6

REASONS FOR ISSUING THE WRIT ...................................... 7

    I.    HOUSTON FIRST HAS A CLEAR RIGHT TO HAVE JUDGE HUGHES' PRELIMINARY INJUNCTION DISSOLVED BECAUSE IT NEVER SHOULD HAVE BEEN ISSUED IN THE FIRST PLACE ..................................................................... 12

        A.    Jurisdictional Bars to Injunctive Relief ...................... 12

            1. Respondents' purported constitutional claims are moot. ......................................................... 12

            2. Alternatively, Respondents' claims, if any, are not ripe. .......................................................... 17

            3. The U.S. District Court abused its discretion by not abstaining and dismissing the RPT's claim for declaratory relief because RPT has a parallel pending state lawsuit that governs the issues raised here ....... 17

            4. Individual Respondents lack standing to assert their purported claims. ......................................... 22

            5. There is no case or controversy here because Respondents have not pleaded or shown any injury

"fairly traceable" to any illegal conduct by Houston First ................................................................ 24

B.   The U.S. District Court Had No Authority to Order Specific Performance of a Validly Terminated Contract and To Amend that Contract to Impose Additional Burdens on Houston First ................................................ 24

C.   One Court Has Already Held that Houston First Properly Exercised Its Valid Contract Right to Declare an Event of *Force Majeure* .............................. 28

D.   Respondents Have Improperly Joined Houston First and the RPT in An Unrelated, Pre-Existing Federal Lawsuit ............................................................ 29

E.   Respondents Failed to Establish the Elements Required to Warrant the Issuance of a T.R.O. ............ 31

II.   The Court's Purported Order Does Not Comply With The Federal Rules Of Civil Procedure, Is Too Vague To Be Enforced, and Grants More Relief Than Is Sought In The Proceedings ...................................................................... 33

CONCLUSION AND PRAYER .................................................................. 35

CERTIFICATE OF COMPLIANCE ........................................................ 36

CERTIFICATE OF SERVICE ................................................................. 36

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bankers Life & Cas. Co. v. Holland,*
    346 U.S. 379 (1953)......................................................................................... 10

*Barr v. Resolution Trust Corp.,*
    837 S.W.2d 627 (Tex. 1992) .......................................................................... 27

*Bd. of Governors of Fed. Reserve Sys. v. DLG Fin. Corp.,*
    29 F.3d 993 (5th Cir. 1994)............................................................................. 8

*Byrum v. Landreth,*
    566 F.3d 442 (5th Cir. 2009)................................................................... 25, 32

*Cabal v. Tex.,*
    51 Fed. Appx. 929 (5th Cir. 2002) ............................................................... 18

*Cheney v. U.S. Dist. Court,*
    542 U.S. 367 (2004)................................................................................... 8, 10

*Cmty. Care Bossier Inc. v. Foti,*
    228 Fed. Appx. 444 (5th Cir. 2007) .............................................................. 18

*Connell v. Dulien Steel Prods., Inc.,*
    240 F.2d 414 (5th Cir. 1957)........................................................................... 8

*County Ethics Comm. v. Garden State Bar Ass'n,*
    457 U.S. 423 (1982)........................................................................................ 21

*Dawson v. Bank of New York Mellon as Tr. for Certificate Holders of CWABS, Inc.,
Asset Backed Certificates, Series 2006-SD1,*
    797 Fed. Appx. 816 (5th Cir. 2019) ............................................................... 8

*Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana,*
    762 F.2d 464 (5th Cir. 1985)......................................................................... 31

*Getty Oil Co. v. Ins. Co. of N. Am.,*
    845 S.W.2d 794 (Tex. 1992) ......................................................................... 27

*Gonzalez v. Guilbot,*
    315 S.W.32d 533 (Tex. 2010) ...................................................................... 27

*Huffman v. Pursue,*
    420 U.S. 592 (1975)....................................................................................... 17

*In re Depuy Orthopaedics, Inc.,*
    870 F.3d 345 (5th Cir. 2017)...................................................................... 7, 8

*In re JPMorgan Chase & Co.,*
    916 F.3d 494 (5th Cir. 2019).......................................................................... 7

*In re Lloyd's Register N. Am., Inc.,*
    780 F.3d 283 (5th Cir. 2015)........................................................................... 8

*In re Volkswagen of Am., Inc.,*
    545 F.3d 304 (5th Cir. 2008) (en banc........................................................... 9

*Jeanes v. Henderson,*
    688 S.W.2d 100 (Tex. 1985) ........................................................................ 27

*MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*,
   995 S.W.2d 647 (Tex. 1999)...................................................... 23
*MJR Corp. v. B & B Vending Co.*,
   760 S.W.2d 4 (Tex. App.–Dallas 1988, writ denied)................... 23
*PCI Transp. Inc. v. Fort Worth & W.R.R. Co.*,
   418 F.3d 535 (5th Cir. 2005)..................................................... 32
*Schlagenhauf v. Holder*,
   379 U.S. 104 ............................................................................. 14
*St. Paul Insurance Co. v. Trejo*,
   39 F.3d 585 (5th Cir. 1994)........................................................ 18
*Tawes*,
   340 S.W.3d ................................................................................ 24
*Webb v. B.C. Rogers Poultry, Inc.*,
   174 F.3d 697 (5th Cir.1999)...................................................... 18
*Younger v. Harris*,
   401 U.S. 37 (1971).................................................................... 17

## Rules

Fed. R. App. P. 32(a)(5) ................................................................ 36
Fed. R. App. P. 32(a)(6) ................................................................ 36
Fed. R. App. P. 32(a)(7)(B) .......................................................... 36
Fed. R. Civ. P. 21 ................................................................... 30, 31
Fed. R. Civ. P. 65(b)..................................................................... 31

## Other Authorities

13 Williston on Contracts § 37:19, at 124-25 (4th ed. 2000) ...................................... 24

## STATEMENT OF RELATED PROCEEDINGS BEFORE THIS COURT

None of which counsel is aware.

## RELIEF SOUGHT

Respondents, the purported attendees of the Republican Convention, and, as of this morning, the Republican Party of Texas ("RPT"), have *five times sought and been refused, in both state and federal court, the same relief requested here based upon the same claims asserted here*, in parallel state court proceedings, including after evidentiary hearings and a trip to the Texas Supreme Court.  Judge Lynn Hughes of the Southern District of Texas, Houston Division, himself had also previously declined to issue any emergency injunctive relief here. After Respondents filed a motion for reconsideration and the RPT was allowed to improperly intervene as a plaintiff, Judge Hughes issued an oral T.R.O./"preliminary injunction" on July 17, 2020, compelling Houston First to not only re-enter into a contract in which it had previously invoked the Contract's *force majeure* provision, but also compelled Houston First to extend the contract beyond the rightfully terminated contract's terms and host the RPT Convention at George R. Brown ("GRB").  A state district court had

previously made a ruling and findings of fact, following an evidentiary injunction hearing, that Houston First properly exercised its right under the force majeure provision related to the COVID-19 pandemic, as well as Governor Abbott's GA-29 Order, and rightfully terminated the contract.

In addition, in his oral injunction order, the Court **judicially amended** the Contract to require that Houston First now supply the facility and services to the RPT **on additional days not required by the Contract,** which ends at midnight on July 18, 2020.  The RPT convention has already begun and, by vote of the RPT Executive Committee on July 13, 2020, is being conducted virtually.  The RPT has an ongoing breach of contract lawsuit against Houston First and Mayor Turner in state court for damages connected to the alleged breach. After a preliminary injunctive hearing, however, the state court found that Houston First had properly exercised the *force majeure* clause. *See* M.R. 0661.  RPT has not appealed the state court's order denying injunctive relief, in which a specific finding that:

> … Houston First adduced evidence that it complied with the notice provision of the Force Majeure clause when it sent the notice of termination on July 8, 2020, which was within seven days of: (1) Governor Abbott's order limiting gatherings of more

2

than 10 people; and (2) receiving Dr. Persse's letter warning of the potential for aerosol transmission,[] the convention's becoming a super-spreader event, that it would be "likely impossible" to maintain social distancing and appropriate hygiene practices, and that the convention would pose a "clear and present danger," not just to convention attendees[,] but also to Houstonians.   M.R. 0661.

The state court further found that: "...the evidence adduced supports Houston First's reliance on the Force Majeure clause as a legal basis to terminate the license with the RPT for its July convention at GRB." M.R. 0661.

The U.S. District Court's oral order directly contradicts the state district court's order creating needless friction between state and federal courts.

Accordingly, Petitioner asks this Court to grant Petitioner's petition for a writ of mandamus, and order the district court to dissolve its preliminary injunction order of July 17, 2020. Petitioner has, by separate motion, also concurrently sought an emergency stay of Judge Hughes' order pending resolution of its petition for writ of mandamus. Petitioner would ask this Court to grant that emergency motion, as well as such other relief as to which the Court may find Petitioner entitled.

## ISSUES PRESENTED

Whether mandamus relief is warranted when:

1)   no appeal is permitted from the granting of a temporary restraining order;

2)   This Court has already held that writs of mandamus are appropriate in cases involving the COVID-19 pandemic and this Court is asked to prevent an event that poses serious and deadly physical danger to the Houston community, convention participants, and communities across Texas;

3)   Petitioner has demonstrated a clear and indisputable right to the writ by showing that:

    a.   Respondents' purported constitutional claims are moot;
    b.   Alternatively, such claim, if any, are not ripe;
    c.   The District Court abused his discretion is not abstaining and dismissing the RPT's claim for declaratory relief because RPT has a pending state lawsuit that governs all issues raised here;
    d.   Individual Respondents lack standing to assert their purported claims;
    e.   There is no case or controversy here because Respondents have not pleaded or shown any injury "fairly traceable" to any illegal conduct by Mayor Turner or Houston First;
    f.   The District Court had no authority to order specific performance of a contract not before the Court for decision or to amend that contract to add additional contract burdens by a preliminary injunction;

g.   The state district court has already held that Houston First properly exercised its valid contract right to declare an event of *force majeure*;

h.   Respondents have improperly joined Houston First, Mayor Turner, and the RPT in an unrelated, pre-existing federal lawsuit; and

i.   The court's purported oral order does not comply with the Federal Rules of Civil Procedure, as it is too vague to be enforced, and grants more relief than sought in the proceedings.

## RELEVANT FACTS

Houston First agrees with and would incorporate by reference, Petitioner Turner's recitation of relevant facts, included in his Petition for Writ of Mandamus. *See* Petitioner Turner's Petition for Writ of Mandamus, at 5-12.

The RPT and Houston First had a valid License Agreement ("Contract") to provide the GRB for the 2020 Texas Republican Convention ("Convention"), which was initially to take place from May 11, 2020 through May 16, 2020. M.R. 1107-1121. It is an uncontested fact that Houston First did not contract with the city of Houston or Mayor Sylvester Turner. *Id.* The RPT later decided to move the Convention to July 13, 2020 through July 18, 2020. *Id.*

The Contract included a *force majeure* clause. *Id.* Houston First exercised its right to invoke and enforce its rights under the *force majeure* provision. *Id.* Specifically, Houston First terminated the Contract based on the current pandemic in the City of Houston, described in Petitioner Turner's recitation of relevant facts, as well as Governor Abbott's Executive Order GA-29, issued on July 2, 2020,

which was memorialized in Dr. David Persse's July 7, 2020 letter to Mayor Sylvester Turner.

RPT challenged Houston First's termination under the *force majeure* provision of the Contract. A state district judge with jurisdiction over the parties and their dispute ruled that Houston First properly invoked the *force majeure* provision and legally terminated the Contract. M.R. 0659-661. After first denying a T.R.O. on July 15, 2020, U.S. District Judge Lynn Hughes granted a Motion for Reconsideration and made an oral order compelling Houston First to resurrect the terminated Contract and make the GRB available if requested by the RPT on July 18, 2020 and thereafter on days beyond the end date of the contract. *See* the Court's Oral Injunction Orders are set forth in the record transcript filed as part of the Mandamus Record by Petitioner Turner. R.R. 10-19.

## REASONS FOR ISSUING THE WRIT

A writ of mandamus is "a drastic and extraordinary remedy reserved for really extraordinary cases." *In re Depuy Orthopaedics, Inc*., 870 F.3d 345, 350 (5th Cir. 2017) (citing in *In re JPMorgan Chase & Co*., 916 F.3d 494, 499 (5th Cir. 2019)). Courts may issue the writ only if

three conditions are met. First, the petitioner must have "no other adequate means to attain the relief he desires." *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380 (2004). Second, this Court "must be satisfied that the writ is appropriate under the circumstances." *Id.* at 381, 124 S. Ct. 2576. Third, the petitioner must demonstrate a "clear and indisputable right to the writ." *Id.*

The first requirement is that the error presented "is truly 'irremediable on ordinary appeal.'" *Deputy*, 870 F.3d at 352−53 (citation omitted). Though "[t]hat is a high bar," *id.*, Petitioner has met it here. "Temporary restraining orders are generally not appealable because they are 'usually effective for only very brief periods of time ... and are then generally supplanted by appealable temporary or permanent injunctions.'"[1]   Consequently, Petitioner has no adequate remedy by appeal.

Second, this court "must be satisfied that the writ is appropriate under the circumstances." *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 381 (2004). Issuing the writ is "especially appropriate," *In re*

---

[1] *Dawson v. Bank of New York Mellon as Tr. for Certificate Holders of CWABS, Inc. , Asset Backed Certificates, Series 2006-SD1*, 797 Fed. Appx. 816, 820 (5th Cir. 2019), *cert. denied sub nom. Dawson v. Bank of New York Mellon*, 19-8171, 2020 WL 2515773 (May 18, 2020) (citing *Bd. of Governors of Fed. Reserve Sys. v. DLG Fin. Corp.*, 29 F.3d 993, 1000 (5th Cir. 1994); *Connell v. Dulien Steel Prods., Inc.*, 240 F.2d 414, 418 (5th Cir. 1957)).

*Lloyd's Register N. Am., Inc.*, 780 F.3d 283, 294 (5th Cir. 2015), where the issues implicated have "importance beyond the immediate case," *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 319 (5th Cir. 2008) (en banc). Mandamus relief would, therefore, be especially appropriate here. This Court has recently issued such writs because of the pandemic in a case involving Governor Abbott's orders. *See In re Abbott*, 954 F.3d 778. It also issued a stay of a temporary restraining order in that case as well. *Id.*

As set forth above, Houston is in the midst *of the peak* of a global pandemic. As Dr. Persse's affidavit makes clear, *see* M.R. 0662-66, Houston is its current epicenter. Its hospitals are at surge capacity and may soon be unsustainably bulging at the seams. Its health care workers are strained to the limit. Public health authorities have deemed the pandemic in Houston "uncontrollable." Worse, Dr. Persse testifies that the virus has mutated to become more infectious and spread faster. *One* infected person, he testified, can infect more than *400* people within 30 days at current spread rates. M.R. 0664. Worse still, the scientific community and World Health Organization ('WHO") now believe that the virus does not just spread by droplets that fall to

the ground within about 6 feet of their entry into the air. Instead, they believe that the virus is aerosolized, which means that it can float in the air for hours and be recirculate. Worst of all, if aerosolized, current mitigation efforts, such as masks and distancing will likely not be effective in stopping the spread of the virus. M.R. 0662-63.

Houston is not where it was a month ago when ***outdoor*** protests took place and it had quite successfully "flattened the curve" through complete and partial shutdowns. It is now in a full-blown health care crisis. Consequently, a "super-spreader" event of the kind Dr. Persse predicted for the RPT Convention could have catastrophic consequences for the whole city population, its hospitals and health care workers, restaurant and hotel workers, and all those who may be infected by those who were infected with COVID-19 in Houston and carried the disease to cities and towns all over the State.

Third, the petitioner must satisfy "the burden of showing that [his] right to issuance of the writ is "clear and indisputable." *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 384 (1953); *Cheney*, 542 U.S. at 381. As demonstrated below, Petitioner has ***already prevailed in five court proceedings, including the Texas Supreme Court,*** on

the issues raised by Respondents below. Moreover, as also discussed below, Houston First had a clear contract right to do exactly what it did. Indeed, after conducting an evidentiary hearing, that is precisely what one court has already found. *See* M.R. 00659-61.

I.   HOUSTON FIRST HAS A CLEAR RIGHT TO HAVE JUDGE HUGHES'
PRELIMINARY INJUNCTION DISSOLVED BECAUSE IT NEVER SHOULD
HAVE BEEN ISSUED IN THE FIRST PLACE

### A.   Jurisdictional Bars to Injunctive Relief

#### 1.   *Respondents' purported constitutional claims are moot.*

This Court may take judicial notice that the RPT Convention has
not been cancelled. It is undisputed that the Republican Convention is
going forward ***now*** virtually.  The RPT has still not, as of the filing of
this Petition for Writ of Mandamus, notified Houston First as to if it
intends to use the GRB following Judge Hughes' order.

Individual Respondents, who are not the legal representatives of
the RPT and were not authorized to sue on its behalf on July 14, 2020,
argued in the U.S. District Court, the state trial court in Houston (that
denied them a T.R.O.), and the Texas Supreme Court (that refused to
grant their petition for writ of mandamus), *see* M.R. 0651-61, have
pleaded only that they are deprived of speech, assembly, and equal
protection rights because the RPT convention has been ***cancelled in
its entirety***. That assumption, underlying every purported claim for
constitutional injury, is belied by the undisputed facts.

a.    This Court may take judicial notice that the RPT virtual state convention has already begun and will continue to take place virtually, as the RPT has not requested the use of GRB as of the filing of this Petition for Writ of Mandamus.

b.    RPT Chairman Dickey announced last Friday that the ***RPT convention could be conducted online.*** M.R.0669-70.

c.    RPT Chairman Dickey assured Republicans that ***planning for a virtual convention has been going on for months and that there will be no loss of enjoyment and satisfaction in a virtual convention***. *See id.* (emphasis supplied). That such plans have now gone awry, solely because of the fault of the RPT and its technical crew, does not amount of a deprivation of constitutional rights by Houston First or Mayor Turner.

d.    The RPT Executive Committee voted Monday night, July 13, 2020, to hold its convention virtually. It had not pursued further legal remedies to hold an in-person event until early today. The RPT's unreasonable delay or laches in seeking emergency relief should deprive them of the right to any equitable relief.

e. In addition, the RPT's official website stated last Friday, July 10, 2020 that:

> should the convention center become unavailable, the SREC voted on Sunday night to move forward [sic] with a contingency plan taking the convention activities online … ***If we have to go online, safe, local gatherings absolutely may be organized so that while Convention business and electronic voting is being conducted with online systems, we can enjoy being with fellow delegates***.

M.R.0679-80 (emphasis supplied).

f. The RPT website reassures attendees that, "if we must move to our online contingency plan, ***the schedule will remain intact***." M.R. 680 (emphasis supplied).

Consequently, the only possible deprivation here is of the ability to hold an ***in-person*** convention ***in a particular hall on a particular date in a global pandemic hot zone***. Even Respondents do not plead that that amounts to a constitutional deprivation. They have pleaded only that ***complete cancellation*** will cause such injury.

This Court may also ***take judicial notice that political party conventions can be held successfully and virtually.*** The Texas Democratic Party has already held its completely virtual convention. The Democratic National Convention is scheduled to take place

virtually and even most Texas Republican elected officials had already opted to make their speeches virtually *at the RPT Convention*.  M.R. 0674.

Under its contract, the *RPT has an obligation to mitigate its damages*. That duty includes the obligation to make contingency plans in the event the RPT or Houston First exercised its right to declare *force majeure*.

Because the main relief Respondents sought against Houston First and Mayor Turner was a T.R.O. preventing them "from cancelling the Texas Republican Convention," *see* Plaintiffs' Emergency Motion for Reconsideration of the Denial of Plaintiffs' Emergency Motion for Temporary Restraining Order at 14, Respondents' purported claims are moot.[2] Moreover, as demonstrated below, the new affirmative, contractual relief they seek is improper and unavailable under Texas and federal law.

Even if they had pleaded it, however, there is no constitutional deprivation of attending a virtual event as opposed to a live one. If that

---

[2] At the time they filed their lawsuit, Respondents, some of whom are RPT officials, knew or should have known that the RPT Convention would proceed virtually. Despite such knowledge, they proceeded to amend their pleadings to add Houston First and Mayor turner and filed an emergency motion without any factual basis.

were the case, ***every court that is holding oral arguments by Zoom, including this one and the Texas Supreme Court, would be violating the Constitution***. This Court does not and should not want to go down that road.

Moreover, this is not the case in which Houston First, Mayor Turner, or anyone banned speech or assembly. Convention-goers can still meet in Houston restaurants and other safer spaces or engage in the marches to which they compare their convention. However, as the Texas Supreme Court held, Respondents' constitutional rights do not include the right to commandeer a particular event space for their speech or assembly. M.R. 0651-53. That right is solely a creature of contract. Judge Hughes ignored that undisputed fact. Instead, Judge Hughes' oral order commandeers GRB and compels Houston First to perform contractual obligations that a parallel state district judge ruled after an evidentiary hearing that Houston First did not have to perform. M.R. 0660-61. Further, Judge Hughes' oral order goes even further to compel Houston First to make GRB available beyond the originally agreed upon license date in the Contract.

2. *Alternatively, Respondents' claims, if any, are not ripe.*

Unless Respondents can show that Houston First cancelled the 2020 RPT Convention in its entirety, which it did not do, Respondents will not suffer a constitutional violation here *by their own measure*.

3. *The U.S. District Court abused its discretion by not abstaining and dismissing the RPT's claim for declaratory relief because RPT has a parallel pending state lawsuit that governs the issues raised here*

The abstention doctrine generally provides that federal equitable relief is generally unavailable against pending state criminal prosecutions, except in narrowly defined and unusual circumstances. *Younger v. Harris*, 401 U.S. 37, 44–46 (1971). The Supreme Court extended the doctrine to state civil proceedings in *Huffman v. Pursue*, 420 U.S. 592 (1975). The factors a court takes into consideration when deciding whether to abstain are: (1) whether there is a pending state-court action in which all of the matters in controversy may be fully litigated; (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant; (3) whether the plaintiff engaged in forum shopping in bringing the suit; (4) whether possible inequities exist by

allowing the declaratory plaintiff to gain precedence in time or to change forums; (5) whether the federal court is a convenient forum for the parties and witnesses; (6) whether retaining the lawsuit in federal court would serve the purposes of judicial economy; and (7) whether the federal court is being called upon to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending. *St. Paul Insurance Co. v. Trejo*, 39 F.3d 585, 590-91 (5th Cir. 1994). A court need not find that all factors favor abstention in order to dismiss a claim. Some, as here, may simply not apply and, therefore, be neutral.

A federal district court's decision to abstain is reviewed under the abuse of discretion standard, but whether elements of a particular abstention doctrine are met is reviewed *de novo. Cabal v. Tex.*, 51 Fed. Appx. 929 (5th Cir. 2002). "The exercise of discretion must fit within the narrow and specific limits prescribed by the particular abstention doctrine involved." *Webb v. B.C. Rogers Poultry, Inc.*, 174 F.3d 697, 701 (5th Cir.1999) (internal quotation and alteration omitted); *Cmty. Care Bossier Inc. v. Foti*, 228 Fed. Appx. 444, 445 (5th Cir. 2007).

Here, it is undisputed that RPT has a pending lawsuit in the 333rd Judicial District Court of Harris County Texas. *See* M.R. 0659-61.

There is also unquestionably forum shopping here. Not only have Respondents fully participated in ***five court proceedings*** based upon five lawsuits on the same issues, including two mandamus petitions in the Texas Supreme Court, but they also brought this action only by improperly adding their purported constitutional claims to an otherwise unrelated COVID lawsuit against the Governor on July 14, 2020. Respondents further joined the RPT as a plaintiff in the middle of the night on July 17, 2020.  This is all after Judge Moore of the 333rd Judicial District Court in Harris County held an evidentiary hearing and specifically found that Houston First had properly exercised its contract rights when it terminated the Contract pursuant to the *force majeure* provision. M.R. 0659-661.

Forum shopping of this kind should be discouraged.  First, it is unclear whether counsel for Respondents actually represents the RPT, which has been represented by separate counsel and has filed separate lawsuits up to now. Second, Judge Hughes' oral order directly contradicts a state court judge's order following a full evidentiary

19

hearing on the *force majeure* issue. Third, because the RPT has waited so long to assert its claims, after apparently throwing in the towel on Monday night and voting to hold a virtual convention, it will be difficult for Houston First to provide the GRB and convention services by tomorrow.   As of the time of filing its Petition for Writ of Mandamus, Houston First has not received any confirmation as to whether the RPT plans on using the GRB tomorrow, pursuant to Judge Hughes' oral order.

Retaining this lawsuit, as amended, in federal court would also ***serve no purpose of judicial economy***, but would only prolong this litigation and duplicate the tireless efforts of the other courts, which have heard these same issues.

In this case, a federal court is being called upon to second-guess a state judicial decree by the state district court before whom the parallel state suit between the same parties is pending.

In assessing abuse of discretion, the Court considers three factors: (1) whether the state proceedings "constitute an ongoing state judicial proceeding;" (2) whether the proceedings "implicate important state interests;" and (3) whether there is "an adequate opportunity in the

state proceedings to raise constitutional challenges." *County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).

The RPT has not dismissed its state law claims; therefore, the state proceedings "constitute an ongoing state judicial proceeding." The proceeding "implicates important state interests" because the only rights that the RPT has to use the GRB derive from a contract governed by Texas law.   There is no constitutional right to use particular facilities.   Consequently, the core issue here is the construction of a contract under Texas law.  The state district court ruled that Houston First did not breach its contract and properly invoked the force majeure clause. M.R. 0659-661.  The Texas Supreme Court concluded in its per curiam opinion:

> The Party argues it has constitutional rights to hold a convention and engage in electoral activities, and that is unquestionable true. But those rights do not allow it to simply commandeer use of the Center.  Houston First's only duty to allow the Party use of the Center for its Convention is under the terms of the parties' Agreement, not a constitution. *See* M.R. 0652-53.

Finally, Respondents had more than "an adequate opportunity in the state proceedings to raise constitutional challenges" and did so. Indeed, all Respondents raised such constitutional and contract challenges and had full evidentiary hearings on the issues. The Texas

Supreme Court affirmed that the RPT has a constitutional right of free speech and assembly, but the Texas Supreme Court cautioned that the RPT has no constitutional right to commandeer the use of GRB. Yet such "commandeering" is exactly what Judge Hughes ordered in not only compelling Houston First to provide the GRB on July 18, 2020 per the terminated Contract, but also on other days not provided for in the Contract.

> **4.    *Individual Respondents lack standing to assert their purported claims.***

The Texas Supreme Court has held that there is no constitutional right under the Texas Constitution to "commandeer" a particular venue like the GRB for speech and assembly purposes. *See* M.R.0652-53. Respondents have not pleaded, identified, or demonstrated any such right under the *U.S.* Constitution. There is none.

It is undisputed that no individual Real Party in Interest is a party to Houston First's contract with the RPT and none is RPT's legal representative. Consequently, individual Respondents have no right to assert the RPT's rights under the Contract. As that contract provides the sole basis for any right to use the GRB, they have no standing to assert any claims here.

Individual Respondents have not pleaded and cannot demonstrate that they are third-party beneficiaries of the Contract, entitled to enforce it. Indeed, individual Respondents do not meet the requirements to be considered one of the two types of third-party beneficiaries Texas law, which governs here, recognizes: donee beneficiaries and creditor beneficiaries. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999). ***Individual Respondents are not donee beneficiaries*** because the performance allegedly promised by Houston First will, when rendered, not come as a pure donation, but will be made in exchange for the payment by the RPT pursuant to its contract with Houston First. *See id.*

***Individual Respondents are not creditor beneficiaries*** because Houston First owes them no legal duty, indebtedness, or contractual obligation. *See id.* The Contract did not express any intent to confer a benefit on individual Respondents or an intent that they possess the right to enforce the Contract. *See MJR Corp. v. B & B Vending Co.*, 760 S.W.2d 4, 16 (Tex. App.–Dallas 1988, writ denied).

***Individual Respondents, are, at most, only incidental beneficiaries*** of the Contract. Under Texas law, "***an incidental***

23

*beneficiary acquires no right either against the promisor or the promisee* by virtue of the promise." *See Tawes*, 340 S.W.3d at 425 (quoting 13 Williston on Contracts § 37:19, at 124-25 (4th ed. 2000)) (emphasis supplied). They, therefore, have no standing to assert any right to use the GRB here.

> **5.    *There is no case or controversy here because Respondents have not pleaded or shown any injury "fairly traceable" to any illegal conduct by Houston First***

Houston First did not deprive any respondent of participation in the Convention.  Respondents' alleged constitutional injuries flow from the alleged cancellation of the entire RPT Convention, something that has not occurred and Houston First did not do.  Rather, the work and the purposes of the Convention have continued remotely.  Simply put, Houston First's election of the force majeure provision did not cancel the Convention.

> **B.    The U.S. District Court Had No Authority to Order Specific Performance of a Validly Terminated Contract and To Amend that Contract to Impose Additional Burdens on Houston First**

It is telling that even the RPT has not here asserted its breach of contract claim, which was asserted in its state court action, even though

the resolution of the question of whether Houston First properly exercised the *force majeure* provisions of the Contract is central to resolution of the purported constitutional claims here.  If the RPT's sole right to use the GRB at all derives from the Contract, which the Texas Supreme Court expressly found, the RPT voluntarily agreed that such rights could be terminated for *force majeure* occurrences, which may be triggered by a pandemic or by an order of the Governor.  Houston First properly exercised its right to terminate performance based upon *force majeure*.  Thus, there can be no constitutional violation here.

Instead of asserting those contract claims in federal court and allowing the district court to avoid deciding the constitutional issues asserted, the RPT essentially asked the district court to skip over the contract issues, ***assume*** the contract had been breached, and go right to whether such breach had constitutional dimensions.  Respondents and the district court, however, cannot skip that essential step.

As demonstrated below, Respondents failed to establish any of the requirements to warrant the issuance of a temporary restraining order.  The first of these is "a substantial likelihood of success on the merits." *See Byrum v. Landreth,* 566 F.3d 442, 445 (5th Cir. 2009). The RPT

simply cannot do that, if at all, without showing that Houston First somehow improperly terminated the contract under the *force majeure* clause.

Contract rights ordinarily have no constitutional dimensions, as the Texas Supreme Court has affirmed in these cases. This is because one party negotiates away some of its rights in exchange for rights against the other contracting party. That is why contracts are ordinarily not the subject of injunctions.

Because RPT has not asserted its contract claims in this proceeding, the U.S. District Court had no ability or opportunity to determine whether Houston First had breached the Contract and, therefore, had no ability to determine if RPT was likely to succeed on the merits of its claim.[3] For that reason alone, any injunction here was improperly granted.

As demonstrated below, at least one court, after an evidentiary hearing, concluded that there had been no breach of contract here. This should be res judicata, as Texas' transaction approach to res judicata bars all suits arising out of the same subject matter of a prior suit that

---

[3] Indeed, the failure to assert such claims was extremely misleading in that Respondents have attempted to convince the Court that, rather than grounding the termination in force majeure, it was based upon some unspecified executive or disaster order by Mayor Turner.

could have been litigated in the prior suit. *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 631 (Tex. 1992). The transactional approach bars suit not only on matters actually litigation, but "also on causes of action or defenses which arise out of the same subject matter and which might have been litigated in the first suit." *Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 798 (Tex. 1992). "[I]f a plaintiff prevails in a lawsuit, his cause of action merges into the [judgment] and the cause of action dissolves." *Jeanes v. Henderson*, 688 S.W.2d 100, 103 (Tex. 1985). "[A] trial court's judgment is final for purposes of res judicata . . . even when the case is on appeal." *Gonzalez v. Guilbot*, 315 S.W.32d 533, 536 n.3 (Tex. 2010). It is, therefore, unlikely that even if RPT's contract claims had been asserted in federal court, they could have met the T.R.O. standards here.

More importantly, what Respondents seek here, however, is not just specific performance of a contract. They asked the U.S. District Court, under its equitable powers, to provide RPT with **new and different** contract rights to have access to and services in the GRB on July 19, 2020 and the weekend thereafter.

The U.S. District Court had no authority to impose **new** contract obligations on a party, particularly in the context of a T.R.O., and Respondents provided no authority that permitted the U.S. District Court Judge to do so. This is particularly true where, as here, there is no showing of any contract breach.

Finally, as suggested herein, the notion of "constitutionalizing" every contract involving speech or assembly is especially fraught and would have dire, unintended consequences.

The U.S. District Court, therefore, could not order specific performance of a contract that was not before it for determination and certainly was not empowered to add future contract obligations in the context of granting a T.R.O.  Such actions would not preserve the *status quo*. It would alter it in a manner no party contemplated and would establish a very dangerous precedent.

### C.  One Court Has Already Held that Houston First Properly Exercised Its Valid Contract Right to Declare an Event of *Force Majeure*

As set forth in the fact section, after holding a lengthy evidentiary hearing in the 333rd Judicial District Court of Harris County, at which Dr. Persse testified live, Judge Daryl Moore found:

28

> ***Houston First adduced evidence that it complied with
> the notice provision of the Force Majeure Clause when
> it sent notice of July 8, 2020***, which was within seven days
> of (1)  Governor Abbott's order limiting gatherings of more
> than 10 people; and (2) receiving Dr. Persse's letter warning
> of the potential for aerosol transmission, the convention's
> becoming a super-spreader event, that it would be "likely
> impossible" to maintain social distancing and appropriate
> hygiene practices, and that the convention would pose a
> "clear and present danger" not just to convention attendees
> but also to Houstonians.

*See* M.R. 0661 (emphasis supplied).  RPT should be bound by this state

court ruling.  Because attendee-Respondents were not parties to the

Contract, have no rights in it, and cannot seek judicial interpretation of

these provisions here or anywhere else, they are also bound by this

determination.  Moreover, the RPT should be bound by this

determination as well since it has not placed the question of breach of

contract before any federal court.

### D.   Respondents Have Improperly Joined Houston First and the RPT in An Unrelated, Pre-Existing Federal Lawsuit

The U.S. District Court Judge created something akin to a

COVID-19 multi-district litigation when he allowed unrelated claims to

be improperly joined in an ongoing proceeding involving only challenges

to Governor Abbott's emergency orders.   This was an abuse of the court's discretion.

Houston First and Mayor Turner were only added to the underlying lawsuit by amended pleading (without leave of court) on July 14, 2020.  The RPT was added early on the morning of July 17, 2020 without prior leave of court.  Under Fed. R. Civ. P. 21, joinder of new parties  in one action is proper only if a)  rights are asserted against them jointly arise out of "the same transaction, occurrence, or series of transactions and occurrences," and  b) "any question of law or fact common to all defendants will arise in the action." Respondents have not attempted to meet these standards here and cannot do so.

First, it is undisputed that the underlying, original lawsuit here addressed only Governor Abbott's executive orders concerning COVID-19 contact tracing, mask wearing, and the like. By contrast, Respondents' claims against Mayor Turner and Houston First turns on the exercise by Houston First of a *force majeure* provision in the Contract and are unrelated to Respondents' claims against Governor Abbott. At his hearing on July 15, 2020, Judge Hughes was apparently not aware that Mayor Turner and Houston First were newly-added

parties and that this case did not arise out of the Governor's orders. When informed that it did not, that the Mayor and Houston First had only been added the night before, and that this was an unrelated case violating Rule 21, Judge Hughes nevertheless overruled Petitioners' objection to the joinder.

For the same reasons, the RPT's claims are improperly joined here. Although they ostensibly raise constitutional claims, any rights the RPT may once have had to use the GRB derive solely from the Contract.

Having failed to obtain relief from Judge Hughes and three state courts in four other lawsuits, one of which is ongoing, Respondents have simply gone forum shopping.  That is improper and should not have been permitted.

### E.     Respondents Failed to Establish the Elements Required to Warrant the Issuance of a T.R.O.

Issuing a temporary restraining order is an "extraordinary and drastic remedy." *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985) (internal quotation omitted). Such injunctive relief should issue only if the alleged harm is "immediate and irreparable." Fed. R. Civ. P. 65(b). A court may issue

such extraordinary relief if the movant establishes "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Byrum v. Landreth,* 566 F.3d 442, 445 (5th Cir. 2009) (internal quotation omitted). Because temporary restraining orders and preliminary injunctions are extraordinary remedies, the movant must "clearly carr[y] the burden of persuasion on all four requirements." *PCI Transp. Inc. v. Fort Worth & W.R.R. Co*., 418 F.3d 535, 545 (5th Cir. 2005) (internal quotations omitted). Respondents could not meet these requirements without demonstrating that the underlying contract here was breached.

As discussed above, Respondents utterly failed to show substantial likelihood of success on the merits because they failed to put the relevant issues before the court to decide.

Respondents also did not show irreparable injury. As suggested, all alleged irreparable injury pleaded flowed, if at all, from the failure to have any convention at all. That the RPT could not use Zoom properly is

not a constitutional violation. The incremental difference in speech and association in having an on-line event, as opposed to a live one, is not a constitutional deprivation. If it were, every federal and state court would also be in violation by conducting Zoom hearings.

As also discussed above, in weighing the balance of harms here, the U.S. District Court should have considered the evidence outlined above: that the incremental difference between an in-person convention and a virtual one is not outweighed by the significant danger of spreading a virulent, increasingly infectious, pandemic disease across the State and/or overwhelming Houston's hospitals which are already operating above capacity and in surge mode. Consequently, the equities weigh overwhelmingly in the public interest to move the convention online.

## II.   THE COURT'S PURPORTED ORDER DOES NOT COMPLY WITH THE FEDERAL RULES OF CIVIL PROCEDURE, IS TOO VAGUE TO BE ENFORCED, AND GRANTS MORE RELIEF THAN IS SOUGHT IN THE PROCEEDINGS

The requirements for a temporary restraining order, the only relief sought by Respondents here, are quite precise and set forth in Rule 65(b). The U.S. District Court has not yet issued a written order, but compelled Houston First to open the GRB upon the request of the

RPT.   Nevertheless, the oral order compelling Houston First is outlined in the attached excerpt from the hearing.  *See* U.S. District Court's Oral Ruling Transcript, attached to the M.R.

First, the purported order does not comply with Rule 65(b). It is not in writing and does not specify in reasonable detail the exact conduct required. Second, it does not supply any reasons for the Court's unprecedented actions or describe any injury that would justify such relief.  The oral order does not state the time for issuance or time it expires or set a date for a preliminary injunction hearing. Worse, there was no discussion of a bond for all of the additional work, not required by Houston First's Contract, but that the Court has purported to require.  Nothing was filed with the clerk's office.

No party can be bound to take actions, punishable by contempt, without the Court's complying with these mandatory requirements. On that basis alone, mandamus should be granted.

Moreover, this Court has granted more relief than was sought and even labeled his oral order today as being a "preliminary injunction," which was not sought.  This too is improper.

## CONCLUSION AND PRAYER

Petitioner Houston First Corporation respectfully requests that this Court grant its petition for writ of mandamus and order that the U.S. District Court dissolve its temporary restraining order/"preliminary injunction," issued orally on July 17, 2020; grant its separate joint motion to stay the T.R.O., pending disposition of this petition; and grant to Petitioner such other relief, in equity and in law, as to which the Court finds that Petitioner is entitled.

Respectfully submitted,

**TAYLOR, BOOK, ALLEN & MORRIS, LLP**

  /s/ Michael P. Morris
GREGORY A. HOLLOWAY
State Bar No. 24000502
Federal Bar No. 23034
gholloway@taylorbook.com
MICHAEL P. MORRIS
State Bar No. 14495800
Federal Bar No. 3740
mmorris@taylorbook.com
LEAH M. HOMAN
State Bar No. 24106109
Federal Bar No. 3438531
lhoman@taylorbook.com
1221 McKinney, Suite 4300
Houston, Texas 77010
Telephone: (713) 222-9542
Facsimile: (713) 655-7727

**ATTORNEYS FOR
PETITIONER/DEFENDANT
HOUSTON FIRST CORPORATION**

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) in that it contains 7,788 words, excluding the table of contents and index of authorities. It also complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) in that it has been prepared in a proportionally spaced typeface using Microsoft Word 14.0 in Century Schoolbook 14 point font.


    /s/ Michael P. Morris
MICHAEL P. MORRIS


## CERTIFICATE OF SERVICE

I hereby certify that on July 18, 2020, I electronically filed the foregoing with the Clerk for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. A true and correct copy of the foregoing has been served on all counsel of record.


    /s/ Michael P. Morris
MICHAEL P. MORRIS