UNITED STATES DISTRICT COURT        SOUTHERN DISTRICT OF TEXAS

United States District Court
Southern District of Texas
**ENTERED**
July 20, 2020
David J. Bradley, Clerk

Steven F. Hotze, et al., §
§
Plaintiffs, §
§
versus § Civil Action H-20-02104
§
Greg Abbott, et al., §
§
Defendants. §

## Opinion on Preliminary Injunction

1. *Introduction.*

   Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.
   — U.S. CONST. amend. I.

   This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

   The Senators and Representatives before mentioned, and the Members of the several State Legislatures, and all executive and judicial Officers, both of the United States and of the several States, shall be bound by Oath or Affirmation, to support this Constitution; but no religious Test shall ever be required as a Qualification to any Office or public Trust under the United States.
   — U.S. CONST. art. VI.

   No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.
   — U.S. CONST. amend. XIV.

2. *Participants.*

Sylvester Turner is mayor of Houston. The City of Houston owns the George R. Brown Convention Center. It has meeting halls aggregating about 1.8 million square feet and capable of hosting 55,000 guests. Houston First Corporation has leased Brown from the city. First is a Texas business corporation. It pays rent to the city and collects fees from people who hire a hall. Essentially, First operates the building for the city, for which it earns money. It has been a lean year with most events cancelled.

3. *The Reservation.*

In 2017, First reserved the Brown for the Republican Party of Texas to host its two-day state convention, scheduled for July 16, 2020. The lease included a force majeure clause which says:

> Either party may terminate this Agreement or suspend its obligation thereunder due to Force Majeure to the extent that such occurrence is beyond the reasonable control of the party whose performance is affected on such affected party's giving notice and full particulars to the other party of such Force Majeure as soon as practicable, but no later than 7 calendar days after the occurrence of the cause relied upon.

4. *The Virus.*

In early 2020, COVID-19, an unusually contagious virus from abroad, rapidly spread around globe, generating responses from public health officials. COVID-19 is complicated; despite research work in every major hospital, COVID has resisted revealing a solution.

First and the Party agreed to amend the force majeure clause to include the epidemic and any order from the Mayor of Houston, Governor of Texas, or President of the United States that restricts the size of gatherings at Brown for health reasons.

By March 2020, the State of Texas sought to stifle the spread of the virus with measures such as stay-home orders, the closure of non-essential businesses, and social distancing. On July 2, 2020, Governor Greg Abbott issued Executive

Order GA-29, supplementing GA-28 and requiring most Texans to wear masks in public and to restrict gatherings to 10 or fewer people.

5.   *Turner Moves.*

On July 6, 2020, Turner wrote the chairman and executive director of the Party, expressing his "concern" for Houston's infection rates and urging them to reconsider having an in-person convention at Brown.

The next day, the director of Houston's Emergency Medical Services, David Persse, M.D., wrote a letter to Turner and First's CEO, Brenda Bazan. Persse opined that a large, in-person gathering at the convention would pose a "clear and present danger" to the health and well-being of the attendees, local workers, and Houstonians at large. Based on Persse's letter, Turner encouraged First to terminate its lease with the Party. On July 8, 2020, First cancelled its agreement with the Party, citing the force majeure clause.

In court, high standards restrict technical data offered in evidence. That kind of opinion testimony must have rigorous science applied to precise data in a recognized method. Persse's letter abounds with emotion and assumptions. His letter uses the phrase "clear and present danger."

It is odd that the medical standard Persse mentions is from Justice Oliver Wendell Holmes in a case about anti-war protesters during the First World War, who had been convicted of a crime. The convictions served to silence President Woodrow Wilson's critics. An emergency security law was perverted into a cancelling of the First Amendment.[1] Justice Holmes's father was, however, a physician. Persse sent letters to accomplish the mayor's intention to block the convention. He presented no dispassionate analysis; he only recast odd pieces of what is in the papers.

6.   *Standing.*

The plaintiffs are a group of people who are delegates, who aspire to be delegates to the national convention, who seek one of the many party offices,

---

[1]   *Schenck v. United States*, 249 U.S. 47, 52 (1919).

who are candidates seeking Party support, who hold Party offices, who want to influence the Party's platform.

To bring a claim in court, the plaintiff must have standing. That means that they are directly, individually, injured as a consequence of the defendants' acts. Also, the problem must be of a nature that it is practicable for a court to devise a remedy.[2]

7. *Misreading and Misapplying.*

The meeting is not a classic-car show nor a quilting exhibition. The Texas Election Code requires it — and requires it now.[3] This convention is the source of a party's officers for the next two years and delegates to this year's presidential convention among other administration.

The governor's orders frequently use the word *essential* to specify exclusions from the full impact of the limits. In GA-29, for example, the rules do not apply to election-related gatherings nor the mask rule to someone giving a speech.[4] Department and grocery stores are open and excluded as essential. The individual stores in some cases will exceed the few thousand delegates expected at the convention. It exceeds their essentialness, because critically it is a single event – not repeated every day.

The Founding Fathers defined arbitrary government as our problem with King George III. At law, that is called the city's denying the delegates equal protection of the laws.[5] Administering the rules in favor of your friends or having no genuine rationale for applications is arbitrary.

8. *The Real Problem.*

The principal of democracy has its mechanics that are intrinsic to its operation. Knowing that the Democratic Party had already decided to have a

---

[2] *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 473 (1982).

[3] TEX. ELEC. CODE ANN. § 174.092(b).

[4] Gov. Greg Abbott, Exec. Order No. GA-29, (2020).

[5] U.S. CONST. amend. XIV, § 1.

electronic convention, the mayor requested memoranda from his staff, with specific outcomes.

The mayor did not, however, look at the advice of Texas Attorney General Ken Paxton's letter to Secretary of State Ruth R. Hughs dated May 29, 2020. Hughs is the chief election officer of Texas. The attorney general instructs the secretary of state that political conventions are excluded from the strictures of the executive orders.

The contractor was told to require a cluster of additional precautions. The Party agreed. Frustrated, four hours after he imposed conditions that he thought would cause the Party to abandon its plans, Turner told the contractor to cancel the event. The city doctor furnished defective smoke-screen letters.

The contractual clause allowing First to cancel the use of the building says exactly what First and the mayor say it does. What it does not mean is that the cancellation may be based on reasons extrinsic to the virus rules and, instead, be based on raw political sabotage. First's best argument is that it was a misreading of the law that gave it the opening to cancel. It was not a misreading; it was a fraudulent reason brought to First by Turner and powered by jeopardy to its investment in the operating contract.

Allowing the Republican Party to meet its responsibilities does not cost the city. All it has to do is stop interfering. Comparable numbers of people will patronize many places as the Party meets. Its contribution to viral risk is no more than another large grocery store.

First was not acting on its own. Its position, in the misjudgment of its leaders, justified following political orders that were defective in content and intention. Following orders has never been a defense— not at Andersonville, not at Nuernberg, not at Mai Ly.

As Turner asserts with vigor that First was all alone in its decisions, his lawyers jumped into the court's conversation with First's capable lawyers to take positions for it. His staff supplied him with Persse's memoranda from preparation by the city attorney's staff.

9. *Conclusion.*

A fair election process is essential. The Republican Party of Texas contracted with Houston First Corporation to host its state convention at the George R. Brown Center. It had discussed the early questions about what the epidemic might mean. First worked with the Republicans until, on the eve of the convention, the mayor began his campaign to disrupt it. On the city's initiative, a plan for modest increases in precautions was offered. The Party accepted them. Four hours later, the city told First to shut it down. First immediately complied, without refunding the Party's $114,000 deposit.

Sylvester Turner worked to get First to cancelled the license to the Republican Party after 18-odd months of preparation and cooperation under the guise of public safety based off twisted readings of the governor's orders. Sylvester Turner and Houston First Corporation have contractual and constitutional responsibilities. The closing of the Brown to the Party will be preliminarily enjoined. No bond is required because the Brown and First have the Party's money.

Rendered July 17, 2020; signed July 19, 2020, at Houston, Texas.

_____
Lynn N. Hughes
United States District Judge